# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| WILLIAM INSULATION COMPANY INC, <br><br> Plaintiff, <br><br> v. <br><br> JH KELLY LLC; and CLEARWATER PAPER CORPORATION, <br><br> Defendants. | CASE NO. C21-5083 BHS <br><br> ORDER ON DEFENDANTS' MOTIONS TO DISMISS |

This matter comes before the Court on Defendant JH Kelly, LLC's ("JHK") motion to dismiss, Dkt. 16, and Defendant Clearwater Paper Corporation's ("Clearwater") motion to dismiss, Dkt. 18. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies JHK's motion and grants Clearwater's motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL HISTORY

Clearwater, a Delaware corporation headquartered in Washington, engaged JHK, a Washington corporation headquartered in Washington, as the general contractor for construction improvements at its Lewiston, Idaho paper pulp factory. Dkt. 1, ¶¶ 3, 4, 9.

JHK engaged Plaintiff Williams Insulation Company, Inc. ("WIC"), a Wyoming corporation headquartered in Washington, as a subcontractor to perform industrial piping insulation, equipment insulation, and abatement work and to erect scaffolding for the project. *Id.*, ¶¶ 2, 10. WIC executed a Master Subcontract agreement ("MSA"), which JHK drafted, an initial addendum, and a second addendum. *Id.*, ¶¶ 14, 20, 22. The second addendum reflected the parties' agreement that WIC would perform the work for $2,194,918.00. *Id.*, ¶ 22.

WIC alleges that at the time it executed the addenda, the design plans for the project were not finalized, and subsequent changes in the project necessitated an increased scope of work, increased its costs, and required additional manpower. *Id.*, ¶ 23. WIC submitted 43 change orders to JHK, encompassing all changed and additional work on the project. *Id.*, ¶¶ 28–29. WIC alleges that JHK paid only some of these orders in full, even after WIC sent a formal Application and Certificate for Payment. *Id.*, ¶¶ 29, 36.

Section 4.9 of the MSA, "Venue," provides in part that "[i]f any suit or action is filed by any party to enforce this Subcontract or otherwise with respect to the subject matter of this Subcontract, this Subcontract and all Work hereunder shall be interpreted under the laws of the State of Washington . . . ." Dkt. 20-2 at 7. Similarly, Section 4.11, "Governing Law," provides that "[t]he law of the State of Washington shall govern this subcontract." *Id.*[1]

---

[1] JHK does not dispute WIC's contention that Court may consider the MSA's provisions without converting the motions to dismiss into motions for summary judgment, because the contracts are referenced throughout the Complaint. *See* Dkt. 20 at 3 n.2 (citing *Walker v. Fred*

WIC and JHK conducted an unsuccessful mediation over WIC's claims for non-payment. Dkt. 1, ¶ 41. WIC sued, bringing claims for breach of contract, breach of the duty of good faith and fair dealing, and *quantum meruit* against JHK, and for unjust enrichment against both JHK and Clearwater. WIC seeks damages in excess of $750,000 for each claim. *Id.*, ¶¶ 53, 56, 62, 70.

On February 25, 2021, JHK moved to dismiss. Dkt. 16. JHK contends that all of WIC's claims against it are barred by WIC's failure to comply with Idaho's contractor registration requirements. Alternatively, JHK contends that the Court should dismiss WIC's unjust enrichment and *quantum meruit* claims because they are incompatible with its breach of contract claim and dismiss WIC's breach of the implied duty of good faith and fair dealing claims because WIC's allegations duplicate its breach of contract claim.

On March 2, 2021, Clearwater also moved to dismiss. Dkt. 18. Clearwater contends that WIC cannot maintain an unjust enrichment claim against it because Idaho's statutory mechanic's lien is the exclusive remedy available.

On March 15, WIC responded to JHK's motion. Dkt. 20. On March 19, 2021, JHK replied. Dkt. 21. On March 22, 2021, WIC responded to Clearwater's motion. Dkt. 22. On March 26, 2021, Clearwater replied. Dkt. 23.

---

*Meyer, Inc.*, 953 F.3d 1082, 1085 n.1 (9th Cir. 2020); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

## II. DISCUSSION

### A. Standard on Motion to Dismiss

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Choice-of-law for Claims Against JHK

JHK argues that WIC cannot recover, notwithstanding the contract's choice of Washington law, because WIC violated Idaho law when it provided construction services in Idaho without registering there as a contractor. WIC counters that the contract selects Washington law, and Washington law permits its claim. The Court must determine whether there is an actual conflict of laws and, if so, whether the MSA's choice-of-law provision, selecting Washington law, is effective.

"'When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis.'" *Erwin v. Cotter Health*

*Ctrs.*, 161 Wn.2d 676, 692 (2007) (quoting *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997)). "If the result for a particular issue 'is different under the law of the two states, there is a real conflict.'" *Id.* (quoting *Seizer*, 132 Wn.2d at 648).

Washington law provides that every contractor shall register, and it is a gross misdemeanor for any contractor to "[a]dvertise, offer to do work, submit a bid, or perform any work as a contractor without being registered as required by this chapter." RCW 18.27.020. It further provides that contractors may not "bring or maintain any action in any court of this state" for payment or breach of contract without proving they were properly registered. RCW 18.27.080. However, the Washington Supreme Court held that this provision does not bar suits by subcontractors against prime contractors because it is intended to protect the public rather than other contractors. *Bremmeyer v. Peter Kiewit Sons Co.*, 90 Wn.2d 787, 791 (1978) ("we are convinced that the legislature did not intend to protect prime contractors from actions initiated by unregistered subcontractors.").

The Idaho Contractor Registration Act ("ICRA") provides in relevant part that:

> No person engaged in the business or acting in the capacity of a contractor, unless otherwise exempt, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which registration is required by this chapter without alleging and proving that he was a duly registered contractor, or that he was otherwise exempt as provided for in this chapter, at all times during the performance of such act or contract.

Idaho Code § 54-5217(2). Unlike Washington, the Idaho Supreme Court held that this registration requirement bars claims against all categories of defendants. *Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 277 P.3d 374, 377–78 (Idaho 2012). If Idaho law

applies, WIC's claim is barred because WIC did not register as a contractor in Idaho. If Washington law applies, WIC's claim may go forward because it is a suit by a subcontractor against a prime contractor. *Bremmeyer*, 90 Wn.2d at 791. Therefore, an actual conflict exists.

Next, the Court considers whether the parties' choice-of-law provision, selecting Washington law, is effective. *See Erwin*, 161 Wn.2d at 693. Washington follows Section 187 of the *Restatement (Second) Conflict of Laws* (1971) to resolves conflict of laws issues where "the parties have made an express contractual choice of law to govern their rights and duties." *Id*. at 694. Restatement Section 187, Law of the State Chosen by the Parties, provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> ***

Restatement (Second) of Conflict of Laws § 187.

JHK contends that the Idaho contractor registration requirement is not something the parties could have chosen to disregard with a specific provision in their contract, so subsection (2)(b) applies and mandates the application of Idaho law. Dkt. 16 at 6–7. WIC counters that proper analysis under that subsection would maintain the parties' choice of Washington law. Dkt. 20 at 11.

JHK contends that application of Washington law would be contrary to a fundamental policy of Idaho. Dkt. 16 at 7. It emphasizes the Idaho Supreme Court's reliance on the Idaho legislature's findings that "'it is in the public interest to provide a mechanism to remove from practice incompetent, dishonest, or unprincipled practitioners of construction,'" and thus the legislature "adopted harsh penalties for contractors that do not comply." *Stonebrook*, 277 P.3d at 379–80 (quoting I.C. § 54–5202). JHK argues that Idaho thus has a materially greater interest than Washington in the application of its law because the work was performed there, and application of Idaho law would thus appropriately penalize WIC's failure to register. Dkt. 16 at 7–8.

WIC counters that the analysis should end at the first step, whether the parties' choice is contrary to a fundamental policy of a state, because the ICRA only prohibits recovery "in any court of this state." Dkt. 20 at 11. Moreover, WIC argues that as both JHK and Clearwater are headquartered in Washington, Idaho's interest in regulating access to its state courts by unregistered contractors does not materially outweigh Washington's interest in regulating the business dealings of its residents (though WIC is a Wyoming resident). *Id*.

JHK retorts that the Court should not read the "in any court of this state" language to limit the ICRA's reach to Idaho state courts for multiple reasons including that not applying the ICRA would frustrate the Idaho legislature's intent, that substantive state law should apply in choice-of-law, and that Washington's link to the parties and the transaction is minor. Dkt. 21 at 5–6 (distinguishing *Nelson v. Kaanapali Properties*, 19 Wn. App. 893 (1978)). WIC's arguments and authorities are more persuasive than JHK's.

First, JHK contends that substantive state laws, even if they limit their application to actions brought "in any court of this state," should still be applied in choice-of-law analysis. *See* Dkt. 21 at 6 (citing *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988)). *Bledsoe* is distinguishable for two reasons. First, *Bledsoe* involved a Maryland tort reform statute which provided that "an action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle." 849 F.2d at 640–41 (citation omitted). The District Court of Maryland and Maryland Court of Appeals construed this limiting language as intended to exempt minor claims in state district courts, rather than to intended to apply to federal courts sitting in diversity. *Id*. at 643 (citations omitted). Here, there is no such authoritative construction concluding that the Idaho legislature did not intend to limit application to suits in its state courts (and the legislature's use of this language in other statutes is not to the contrary). Second and more importantly, the parties in this case bargained for the application Washington law, unlike the parties in *Bledsoe*.

Second, as WIC points out, the Washington Court of Appeals has applied Washington law against a more directly analogous and onerous statute, even where the

parties' contract did not include a Washington choice of law provision. Dkt. 20 at 10 (citing *Nelson*, 19 Wn. App. at 899–900). In *Nelson*, a Washington-registered contractor performed construction in Hawaii for a joint venture between a Washington corporation and a Hawaiian corporation. 19 Wn. App. at 894. Hawaii law provided that an unregistered contractor could not recover "in a civil action," purporting to deny the plaintiff recovery in any court. *Id*. at 896, 899.

Under the "significant relationship" test (applicable absent an effective choice of law by the parties), the Court of Appeals noted that generally the place of performance would be the most significant contact. *Id*. at 897–898. However, the factors in section 196 and comment d of the *Restatement (Second) Conflicts* (1969) (evaluating whether or when the local law of the state where services were rendered should not apply) indicated that Washington law should apply. *Id*. at 898–99. Washington had a close relationship to the transaction and the parties, applying Washington law would protect the parties' expectation that the construction would occur and payment be rendered, and the public policy of each state (to protect the public from unreliable or unscrupulous contractors) did not conflict. *Id*. The Court of Appeals concluded that "[t]he significance of the place of contracting, the domicile and residence of the parties . . . the expectation interests of the parties, and the policy of Washington in providing a forum [for a dispute primarily between Washington domiciliaries] far outweigh the significance of the place of performance and the public policy of Hawaii in applying its rule." *Id*. at 899–900.

Here, the expectation interest of the parties is even stronger, given the choice of law in the contract. It is not clear that the fundamental policy of Idaho extends to lawsuits

outside its state courts, and as applied to the facts of this case, the public policy interests of Washington and Idaho in regulating contractors are relatively similar. *Compare Erwin*, 161 Wn.2d at 696 (when registration law intends to protect from perils of incompetent or untrustworthy practitioners, but defendant does not contend plaintiff is incompetent or untrustworthy, interest of state requiring registration is not impacted) *with Stonebrook*, 277 P.3d at 379 (Idaho's interest in imposing harsh penalties on unregistered contractors is to remove from practice incompetent, dishonest, or unprincipled practitioners). And JHK is a Washington corporation which drafted a contract selecting Washington law. Therefore, the Court concludes that the application of Washington law is not contrary to the fundamental policy of Idaho, and even if it is, Idaho does not have a materially greater interest than Washington in determining whether WIC can recover under the contract. *See Erwin*, 161 Wn.2d at 695–96 (whether state registration law bars recovery under contract goes to substantial validity of parties' agreement to pay fees, analyzed under Section 187(2) of the Restatement; when the first two questions of the section are answered in the negative, parties' choice of Washington law stands).

JHK also argues that the contract's choice-of-law provision does not apply to WIC's claim because the parties clearly agreed that WIC would comply with Idaho law. Dkt. 21 at 3–4. JHK cites Article 6.3 of the MSA, which provides that WIC will provide proof of registration within five days of execution of the subcontract and prior to starting work and provides that failure to do so is grounds for termination of the subcontract. *Id*. This is not persuasive because JHK did not and does not seek to terminate the contract under this provision. Additionally, the plain language of the contract's choice-of-law

provisions is not limited to contract interpretation as JHK contends—as noted, the contract states that suits related "to the subject matter of this Subcontract, this Subcontract *and all Work hereunder* shall be interpreted under the laws of the State of Washington . . . ." Dkt. 20-2 at 7 (emphasis added). Similarly, the MSA's governing law provision provides that Washington law governs "this subcontract." *Id*. These provisions are at the very least ambiguous as to whether they limit choice-of-law to contract interpretation and are thus construed against the drafter, JHK. *Pierce County v. State*, 144 Wn. App. 783, 813 (2008).

As the Washington Supreme Court concluded in *Erwin*, quoting the Washington Court of Appeals, "'the interest of the parties are best served by leaving them exactly where they placed themselves—litigating this dispute in Washington' and under Washington law." 161 Wn.2d at 700 (citation omitted). Therefore, JHK's motion to dismiss WIC's claims on the basis of WIC's failure to comply with the ICRA is **DENIED**.

**C.     Breach of the Duty of Good Faith and Fair Dealing Claim Against JHK**

WIC's breach of the duty of good faith and fair dealing allegations, that JHK failed to timely pay for additional work requested, do not go beyond its breach of contract claims. JHK contends that allegations supporting a claim for breach of the duty of good faith and fair dealing must "[g]enerally" go beyond what is alleged in support of a breach of contract claim. Dkt. 16 at 14. However, JHK cites only authority relying on California law for this proposition. *Id*. (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.

App. 3d 1271, 1395 (1990)); *Cal Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985)). Without Washington authority on this issue, JHK has not established that WIC fails to state a claim for breach of the duty of good faith and fair dealing where it alleges that JHK induced it to perform work and refused to pay. Therefore, JHK's motion to dismiss WIC's breach of the duty of good faith and fair dealing claim is **DENIED**.

D.  **Equitable Claims Against JHK and Clearwater**

   1.  **JHK**

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484 (2008); *see also* 25 Wash. Prac., Contract Law and Practice § 14:7 (citing *Bircumshaw v. State*, 194 Wn. App. 176 (2016) ("Restitution [the remedy to prevent unjust enrichment] is not available for breach of a fully performed contract when the only outstanding performance is the payment of money.")). JHK is correct that quasi-contract or implied contract claims may be alternatives to failed contract existence claims like fraud in the inducement or illegality of contract, but they are not alternatives to failed breach of contract claims. *Wodija v. Wash. State Emps. Credit Union*, No. C15-5693 BHS, 2016 WL 3218832, at *4 (W.D. Wash. June 9, 2016). However, WIC is correct that Federal Rule of Civil Procedure 8(d)(2) permits pleading in the alternative.

If JHK concedes that in fact what is at issue is a fully performed contract where the only outstanding performance is the payment of money, then these quasi-contractual

claims would not be available. However, if JHK contends that extra work WIC allegedly performed occurred outside the written contractual relationship, these quasi-contractual claims for recovery could be available. *See Mod. Builders, Inc. of Tacoma v. Manke*, 27 Wn. App 86, 93–94 (1980) ("Quantum meruit may substitute for the contract price and form the basis of total recovery only when substantial changes occur as work progresses which are not covered by the original contract and which were not within the contemplation of the parties when the contract was formed."). Of course, double recovery would not be permitted. Therefore, JHK's motion to dismiss as to WIC's unjust enrichment and *quantum meruit* claims is **DENIED**.

      **2.**      **Clearwater**

Clearwater argues that WIC has an adequate remedy at law—a mechanic's lien—and cannot pursue its unjust enrichment claim because neither Washington nor Idaho permits equitable recovery in unjust enrichment when an adequate legal remedy exists. Dkt. 18 at 3. Both Washington and Idaho statutorily provide that unpaid subcontractors may file a mechanic's lien against the owner's property to secure payment. RCW 60.04.011, *et seq.*; Idaho Code § 45-501, *et seq*. WIC contends that "Washington courts often find that where a subcontractor seeks to recover against an owner for extra-contractual work on a project, unjust enrichment is considered a legal rather than an equitable claim." Dkt. 22 at 9 (citing *Auburn Mech., Inc. v. Lydig Constr., Inc.*, 89 Wn. App. 893 (1998)).

However, *Auburn Mechanical* considered whether actions for money owed a subcontractor for extra work allegedly performed, on claims not exclusive to equity,

entitled the plaintiff to a jury. 89 Wn.App. at 314–17. More directly analogous Washington authority holds that unjust enrichment is unavailable if adequate legal remedies exist. *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 839 (2000), *opinion corrected on denial of reconsideration*, 1 P.3d 578 (2000).[2] Idaho similarly holds that mechanic's liens are the exclusive remedy for subcontractors who lack express contracts with owners. *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 970 P.2d 627, 641 (Idaho 1999).

    WIC also argues that it has no adequate legal remedy because "a universal requirement, regardless of the state involved, is that mechanic's lien rights can only be asserted in the state and county where the property is located," so it cannot invoke Washington's mechanic's lien statute, and its lack of registration bars it from invoking Idaho's. Dkt. 22 at 10. However, as Clearwater points out, WIC's inability to invoke Idaho's mechanic's lien is a problem of its own making, which does not render the statutory remedy inadequate. Dkt. 23 at 3 (citing, among others, *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990), *overruled on other grounds by United States v. Clagett*, 3 F.3d 1355 (9th Cir. 1993) ("Failure to comply with a remedy at law does not make it inadequate so as to require the district court to exercise its equitable jurisdiction.")).

---

[2] WIC argues that *Seattle Professional Engineering Employees Association* is inapposite because it refers to a statutory remedy exclusive to employees. Dkt. 22 at 9. However, as noted, both Washington and Idaho have mechanic's lien statutes. RCW § 60.04.011, *et seq.*; Idaho Code § 45-501, *et seq.*

WIC also argues that it should be able to recover in equity under Washington law based on the "interrelated" nature of the contract between WIC and JHK and that the contract between JHK and Clearwater extends the Washington choice-of-law provision in WIC's contract with JHK to WIC's relationship with Clearwater. However, WIC and Clearwater have no contract, and there is no basis for the Court to conclude that provisions in WIC contract with JHK should be applied against Clearwater or for the Court to assume a Washington choice-of-law provision exists in the contract between JHK and Clearwater which WIC can somehow invoke. WIC further argues that JHK has a statutory duty in both Idaho and Washington to maintain copies of its subcontractor's certificates of registration, it owed a duty to Clearwater to do so, and Clearwater should not benefit from JHK's failure. The Court agrees with Clearwater that this argument is nonsensical. If JHK were indeed somehow responsible for WIC's failure to register, that would be relevant to a claim by WIC against JHK, not against Clearwater—and would not make the statutory remedy any less adequate. In sum, WIC's arguments related to the contracts are unpersuasive and unsupported by authority.

As WIC is responsible for the inadequacy of its statutory remedy, the Court concludes that a remedy in equity is not appropriate. Therefore, Clearwater's motion to dismiss WIC's unjust enrichment claim is **GRANTED**. However, as it is not clear that WIC's claims against Clearwater cannot be saved by amendment, as discussed below, the Court grants leave to amend.

### E. Leave to Amend

In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rukoff-Sexton, Inc.*, 845 F.2d 2019, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Clearwater is correct that WIC does not allege facts to support a claim that Clearwater was acting as a general contractor under the Washington Contractor's Registration Act, RCW 18.27.020, such that Clearwater may be directly liable to WIC. While it is not clear that WIC could make these allegations, and it would thus appear the mechanic's lien would remain an exclusive, unavailable remedy, it is not clear that "no set of facts could be proved" under an amended pleading that would constitute a valid claim. *Miller*, 845 F.2d at 214. Therefore, as leave to amend should be granted with "extreme liberality," *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), WIC's request for leave to amend as to this claim is **GRANTED**.

### F. Fees

JHK and Clearwater seek fees for their motions, and WIC seeks fees for being required to respond. The MSA between JHK and WIC requires that the prevailing party in any dispute related to the MSA or projects completed under it receive their attorney's fees and costs. Dkt. 1, ⁋ 43. While WIC is the prevailing party as to JHK's motion,

neither party has yet prevailed in the dispute, so the Court finds it prudent to reserve this question for later in the litigation.

Clearwater does not cite any authority in support of its request for fees for its motion, and WIC does not cite any authority in support of its request for fees for having to respond. The Court thus declines to award any.

## III. ORDER

Therefore, it is hereby **ORDERED** that JHK's motion to dismiss, Dkt. 16, is **DENIED**, and Clearwater's motion to dismiss, Dkt. 18, is **GRANTED**. WIC may file an amended complaint as set out herein no later than May 28, 2021.

Dated this 11th day of May, 2021.

BENJAMIN H. SETTLE
United States District Judge