UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM INSULATION COMPANY, INC., | CASE NO. C21-05083 BHS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| JH KELLY LLC, and CLEARWATER PAPER CORPORATION, | |
| Defendants. | |

This matter comes before the Court on Defendant Clearwater Paper Corporation's motion to dismiss, Dkt. 27. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and grants the motion for the reasons stated below.

## I.   BACKGROUND

Clearwater, a Delaware corporation headquartered in Washington, engaged Defendant JH Kelly LLC ("JHK"), a Washington corporation headquartered in Washington, as the general contractor for construction improvements at its paper pulp factory in Lewiston, Idaho. Dkt. 26, ¶¶ 3, 4, 9. JHK then hired Plaintiff William

Insulation Company, Inc. ("WIC"), a Wyoming corporation headquartered in Wyoming, as a subcontractor to perform industrial piping, equipment insulation, and abatement work and to erect scaffolding for the project. *Id.* ¶¶ 2, 9. WIC and JHK executed a Master Subcontract Agreement ("MSA") and two addenda. *Id.* ¶¶ 15, 21, 23. The second addendum reflected the parties' agreement that WIC would perform the work for $2,194,918.00. *Id.* ¶ 23. Clearwater was not a party to the MSA.

WIC alleges that at the time it executed the addenda, the design plans for the project were not finalized, and subsequent changes in the project necessitated an increased scope of work, increased its costs, and required additional manpower. *Id.* ¶ 24. WIC submitted 43 change orders to JHK, encompassing all changed and additional work on the project. *Id.* ¶¶ 29–30. WIC alleges that JHK paid only some of these orders in full, even after WIC sent a formal application and certificate for payment. *Id.* ¶¶ 30, 37.

Section 4.9 of the MSA, "Venue," provides in part that "[i]f any suit or action is filed by any party to enforce this Subcontract or otherwise with respect to the subject matter of this Subcontract, this Subcontract and all Work hereunder shall be interpreted under the laws of the State of Washington . . . ." Dkt. 20-2 at 7. Similarly, Section 4.11, "Governing Law," provides that "[t]he law of the State of Washington shall govern this subcontract." *Id.*

WIC sought payment from JHK but the parties could not reach an agreement. Dkt. 26, ¶ 43. WIC sued, bringing claims for breach of contract, breach of the duty of good faith and fair dealing, and *quantum meruit* against JHK, and for unjust enrichment against

1  both JHK and Clearwater. Dkt. 1. WIC seeks damages in excess of $750,000. *Id.* ¶¶ 54,

2  57, 64, 72.

3      Clearwater moved to dismiss on March 2, 2021, arguing that WIC could not

4  maintain an unjust enrichment claim against it because Idaho's statutory mechanic's lien

5  is an exclusive, legal remedy and both Washington and Idaho law bar a plaintiff from

6  pursuing equitable remedies when an adequate legal remedy is available. Dkt. 18.

7  Because it was not a registered contractor, WIC could not avail itself of Idaho's

8  mechanic's lien. The Court granted Clearwater's motion to dismiss, holding that WIC's

9  inability to invoke Idaho's mechanic lien was a problem of its own making and that did

10  not render the remedy inadequate. Dkt. 24 at 13–15. The Court granted WIC leave to

11  amend its complaint, concluding that it was not clear that WIC's claims against

12  Clearwater could not be saved by amendment. *Id.* at 16.

13      WIC's amended complaint alleged that Clearwater itself acted as a general

14  contractor on the project, adding assertions against Clearwater that many were previously

15  only asserted against JHK. *See, e.g.*, Dkt. 26, ¶¶ 10, 11, 26, 32, 33. As in WIC's original

16  complaint, the only claim asserted against Clearwater is unjust enrichment. *Id.* ¶¶ 58–64.

17      Clearwater now moves to dismiss WIC's amended complaint, arguing WIC's

18  claim against Clearwater fails for two reasons. Dkt. 27 at 1–2. First, Clearwater argues

19  that, as the Court held in its order dismissing Clearwater as a defendant, Dkt. 24, the

20  Idaho mechanic's lien law is an adequate statutory remedy. Dkt. 27 at 2. Second,

21  Clearwater argues that WIC cannot assert unjust enrichment because it was not registered

22  as a contractor in Idaho or Washington at any relevant time. *Id.*

1    WIC responds that this Court must apply Washington law under the MSA

2    (between JHK and WIC) and, under Washington's conflict of law analysis, the

3    substantial interest test. Dkt. 30 at 7–11. WIC also asserts it is currently registered as a

4    contractor in the state of Washington, though WIC does not and apparently cannot allege

5    that it was registered at the time of contracting or when the work was performed.[1] *Id.* at 4.

6    But WIC also argues that it does not matter whether it was a registered contractor

7    because Clearwater was also a contractor, permitting WIC to sue under a Washington

8    common law exception permitting unregistered contractors to sue other contractors. *Id.* at

9    11–16. Finally, WIC argues that the Court erred in concluding that Idaho's mechanic lien

10   is a legal remedy and therefore the existence of such a remedy should not hinder WIC

11   from seeking a legal remedy under Washington law. *Id.* at 16–21.

## II.   DISCUSSION

### A.    Standard on Motion to Dismiss

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A

plaintiff's complaint must allege facts to state a claim for relief that is plausible on its

face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility"

when the party seeking relief "pleads factual content that allows the court to draw the

---

[1] WIC's Motion to Take Judicial Notice, Dkt. 29, is GRANTED. But the fact that WIC is currently a registered contractor in Washington does not negate the requirement in RCW 18.27.080 that the suing contractor be registered at the time the parties contracted.

1   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although

2   the court must accept as true the Complaint's well-pled facts, conclusory allegations of

3   law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to

4   dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.*

5   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to

6   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

7   conclusions, and a formulaic recitation of the elements of a cause of action will not do.

8   Factual allegations must be enough to raise a right to relief above the speculative level."

9   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted).

10  This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-

11  harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

12  **B.    Idaho Mechanic's Lien**

13         In its prior order on JHK and Clearwater's motion to dismiss, the Court held that

14  WIC was barred from pursuing a claim against Clearwater because the Idaho mechanic's

15  lien was an exclusive, legal remedy. Dkt. 24 at 13–15. There, the Court accepted the

16  premise that Idaho's mechanic's lien is a legal remedy and held that "unjust enrichment is

17  unavailable if adequate legal remedies exist." *Id.* at 14.

18         Clearwater argues the Court should apply this same logic again and dismiss WIC's

19  amended complaint. Dkt. 27 at 5–6. WIC argues that the Court erred in its order because

20  even though mechanic's liens are statutory in nature, they provide equitable rather than

21  legal remedies. Dkt. 30 at 16–17. WIC cites to seven recorded Washington cases holding

22

1 as much, spanning from 1890 to 2013. *Id.* The Court agrees that its previous holding was

2 in error.

3       Foreclosure of a mechanic's lien is an equitable remedy in both Washington and

4 Idaho. *See Alpine Indus., Inc. v. Gohl*, 30 Wn. App. 750, 760 (1981) ("Actions to

5 foreclose mechanics' and materialmen's liens . . . are equitable proceedings."); *Jensen v.*

6 *Bumgarner*, 137 P. 529, 530 (Idaho 1913) ("[T]his is a suit in equity to foreclose a

7 mechanic's lien."). While unjust enrichment is, in fact, unavailable if adequate legal

8 remedies exist, the same is not true for equitable remedies. Because the Idaho mechanic's

9 lien is an equitable remedy, no adequate remedy at *law* exists,[2] and WIC's unjust

10 enrichment claim cannot be dismissed on that basis. Nevertheless, WIC cannot sue

11 Clearwater because Idaho law applies, and WIC is barred from suing Clearwater under

12 Idaho law.

13 **C.    Choice of Law**

14       The parties disagree as to which state's law should apply in this case. Clearwater

15 primarily argues that WIC's claims are barred in both Washington and Idaho.

16 Alternatively, Clearwater argues that Idaho law should apply because Idaho has a greater

17 interest in having its law applied and Idaho law would bar WIC's claim. Dkt. 27 at 12–

18 14. WIC argues that its claim is plausible under Washington law and that Washington

19

20

21       [2] Unjust enrichment is also an equitable remedy in both states. *See Young v. Young*, 164

Wn.2d 477, 486 (2008); *Stevenson v. Windermere Real Est./Cap. Grp., Inc.*, 275 P.3d 839, 844

22 n.4 (Idaho 2012).

law should apply because applying Washington law would better conform to the parties'

expectation interests and the public policy of the two states. Dkt. 30 at 7–10.

The Court only performs a choice of law analysis if there is an actual conflict

between the laws of the two relevant jurisdictions. If an actual conflict exists,

Washington courts apply the law of the jurisdiction with the "most significant

relationship" to the dispute, including considering any choice of law agreement between

the parties.

### 1.    Actual Conflict

"When parties dispute choice of law, there must be an actual conflict between the

laws or interests of Washington and the laws or interests of another state before

Washington courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health*

*Ctrs.*, 161 Wn.2d 676, 692 (2007) (internal quotations omitted). A "real conflict" exists if

the result for a particular issue is different under the two states' laws. *Id.* It is undisputed

that WIC's unjust enrichment claim against Clearwater would be barred under Idaho law.

*See* Dkt. 30 at 7; Dkt. 27 at 6–7. Whether the Court must perform a choice of law

analysis therefore depends on whether WIC has a viable unjust enrichment claim against

Clearwater under Washington law.

### a.    Washington Registration Requirements

Clearwater argues that RCW 18.27.080 bars WIC's unjust enrichment claim

because WIC was not a registered contractor at the time it contracted to perform work on

Clearwater's mill. Dkt. 27 at 8–9. WIC argues that Clearwater acted as a contractor and

that this case therefore falls under an exception laid out in *Bremmeyer v. Peter Kiewit*

*Sons Co.*, 90 Wn.2d 787, 791 (1978), which held that the bar against lawsuits by unregistered contractors in the Washington Contractor Registration Act ("WCRA") does not apply in suits against other contractors. Dkt. 30 at 13. Clearwater argues that the *Bremmeyer* exception does not apply because it is the owner of the mill and not in privity of contract with WIC. Dkt. 27 at 10.

Under WCRA, a contractor commits a gross misdemeanor if the contractor offers to do work or performs work as a contractor without being registered with the Washington Department of Labor and Industries. RCW 18.27.020(2)(a). A contractor also must be registered to bring suit for breach of contract or performance of work for which registration is required. RCW 18.27.080. The suing contractor must have been registered at the time the contract was formed. *Id.* A contractor is any entity that "undertakes to . . . construct, alter, [or] repair . . . any building . . . or, who, to do similar work upon his or her own property, employs members of more than one trade upon a single job." RCW 18.27.010(1)(a). This bar to recovery for unregistered contractors "extends to alternative remedies such as unjust enrichment." *Bort v. Parker*, 110 Wn. App. 561, 570 (citing *Stewart v. Hammond*, 78 Wn.2d 216, 220 (1970)).

WIC is a contractor under WCRA's definition because it contracted with JHK to perform construction work on Clearwater's paper pulp facility. As previously established, WIC was not registered at any relevant time. Therefore, because WIC was an unregistered contractor at the time it contracted with JHK, it cannot sue Clearwater for unjust enrichment under Washington law unless the *Bremmeyer* exception applies.

1        **b.     The *Bremmeyer* Exception**

2            In *Bremmeyer*, the Washington Supreme Court held that RCW 18.27.080's bar to

3    sue does not apply between a general contractor and a sub-contractor. 90 Wn.2d at 791.

4    The court explained that the purpose of WCRA is to protect the public—specifically,

5    "customers who themselves are not routinely in the business of acting as 'contractors' as

6    defined by RCW 18.27.010." *Id.* at 790. In other words, WCRA was not intended to

7    protect contractors from each other.

8            Clearwater argues that the *Bremmeyer* exception does not apply for two reasons.

9    First, Clearwater asserts that *Bremmeyer* is distinguishable because it involved a suit by

10   an unregistered subcontractor against a contractor for a breach of the parties' subcontract.

11   Dkt. 27 at 9–10. Here, Clearwater and WIC are not in privity of contract, and Clearwater

12   is instead the owner of the project and thus, according to Clearwater, "falls within the

13   class of the public that the WCRA is intended to protect." *Id.* at 10–11. Second,

14   Clearwater argues that under RCW 18.27.090(11), Clearwater is both exempt from

15   WCRA registration requirements and is protected against suit by unregistered

16   contractors. *Id.* at 11.

17           WIC alleges that Clearwater acted as a general contractor for the project. *See* Dkt.

18   26. WIC argues that if Clearwater is a general contractor, WIC's suit is proper under the

19   *Bremmeyer* exception, even if it was not registered. Dkt. 30 at 11–16.

20           First, Clearwater argues *Bremmeyer* does not apply because it was not in privity of

21   contract with WIC. The applicability of the *Bremmeyer* exception does not turn on

22   whether the plaintiff is in privity with the defendant. Rather, the *Bremmeyer* exception

1    draws a distinction between contractors and the general public; it holds that contractors,

2    unlike the general public, are not in the class of individuals WCRA was designed to

3    protect. *Bremmeyer*, 90 Wn.2d at 791 ("[T]he legislature did not intend to protect prime

4    contractors from actions initiated by unregistered subcontractors."); *see also Hinton v.*

5    *Johnson*, 87 Wn. App. 670, 672 (1997) ("The CRA does not apply to actions between

6    contractors."). Thus, Clearwater's privity argument fails.

7         Second, Clearwater argues that *Bremmeyer* does not apply because it is an owner,

8    and thus it is both exempt from and protected under WCRA. There are multiple classes of

9    individuals and companies that are not required to register under WCRA, including: "An

10   owner who contracts for a project with a registered contractor." RCW 18.27.090(11).

11   That exemption does not "deprive the owner of the protections of [WCRA]." *Id.* But an

12   owner who also acts as a contractor is still subject to suit under the *Bremmeyer* exception

13   if the owner is "regularly engaged in the business of contracting." *Hinton*, 87 Wn. App. at

14   672. Under WCRA, "contractor" includes a corporation that "employs members of more

15   than one trade upon a single job or project or under a single building permit except as

16   otherwise provided in [WCRA]." RCW 18.27.010(1)(a).

17        Clearwater appears to qualify for the exemption under RCW 18.27.090(11)

18   because it is an owner who contracted for a project with JHK, a registered contractor.

19   Under that exemption, Clearwater is not required to register as a contractor and could still

20   sue others despite its lack of registration. But as WIC points out, whether Clearwater

21   qualifies for that exemption is irrelevant to the question of whether it can be sued as a

22

contractor under *Bremmeyer*. Dkt. 30 at 15–16. Thus, Clearwater's exemption argument also fails.

WIC's amended complaint plausibly alleges that Clearwater is a "contractor" under WCRA. Specifically, WIC claims that Clearwater employed both JHK and at least one subcontractor—Valmet—for its pulp mill project. Dkt. 26 ¶¶ 9–11. WIC also asserts that Clearwater directed much of the project, contracted with other trades to complete the project, supervised and coordinated the work, served as the direct point of communication between trades it hired and JHK, and directly superintended various trades on the project. While WIC has not conclusively established that Clearwater acted as a general contractor for this project, WIC has satisfied the *Twombly*/*Iqbal* standard to plausibly assert that Clearwater acted as a general contractor.

### c.     Idaho Contractor Registration Act

The Idaho Contractor Registration Act ("ICRA") provides that an unregistered contractor, unless otherwise exempt from registration, cannot bring an action in any court of the state "for the performance of any act or contract for which registration is required." Idaho Code § 54-5217(2). Unlike Washington, the Idaho Supreme Court held that this registration requirement bars claims against all categories of defendants. *Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 277 P.3d 374, 377–78 (Idaho 2012). Idaho does not have any case law that parallels the *Bremmeyer* exception.

While ICRA bars WIC from suing Clearwater in Idaho, the *Bremmeyer* exception to WCRA, paired with WIC's plausible allegation that Clearwater was a contractor,

1    would permit WIC to sue under Washington law. Therefore, there is an actual conflict

2    between the laws of Washington and the laws of Idaho.

3          **2.      Choice of Law Provision in MSA**

4          Because an actual conflict exists, the next question is whether the choice of law

5    provision in the MSA between JHK and WIC applies to WIC's claims against

6    Clearwater. The choice of law clause in the MSA states that Washington law shall govern

7    the terms of the contract. Dkt. 26, ¶ 20. WIC argues that the court must apply the choice

8    of law provision unless "the chosen state has no substantial relationship to the parties or

9    that application of the chosen law would be contrary to a fundamental policy of

10   Washington." Dkt. 30 at 7. Clearwater argues that the MSA's choice of law provision

11   does not apply between Clearwater and WIC because Clearwater is not a party to that

12   contract and has no contractual relationship with WIC whatsoever. Dkt. 27 at 13; Dkt. 32

13   at 12.

14         A contractual choice of law provision should generally be enforced "so long as

15   applying it does not violate the fundamental public policy of the forum state." *Freestone*

16   *Cap. Partners L.P. v. MKA Real Est. Opportunity Fund I, LLC*, 155 Wn. App. 643, 658–

17   59 (2010). A contract cannot bind a nonparty. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S.

18   279, 294 (2002). That principle is true even in situations like here, where one of the

19   contracting parties and the non-contracting party share a close relationship not governed

20   by the relevant contract. *Cf. Freestone Cap. Partners*, 155 Wn. App. at 660–61 (holding

21   that a choice of law provision in a promissory note between a debtor and a lender did not

22

bind guarantors sued by the lender because the guarantors did not sign the promissory note).

The MSA was executed by WIC and JHK. Dkt. 26, ¶ 15. Clearwater had a separate agreement with JHK[3] and had no contractual relationship with WIC. *Id.* ¶ 9. Because Clearwater was not a party to the MSA, Clearwater is not bound by the choice of law provision in the MSA.

### 3. Most Significant Relationship

Washington uses the most significant relationship test to determine choice of law questions. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 967 (2014) (en banc). In determining the "most significant relationship," Washington courts employ a two-step analysis. *Id.* at 968. First, courts evaluate the parties' contacts with each jurisdiction that are relevant to the instant cause of action. *Id.* Second, courts consider the interests and public policies of the relevant jurisdictions. *Id.*

In this Court's order determining choice of law as between JHK and WIC, the Court examined choice of law principles under Restatement § 187 (Law of the State Chosen by the Parties) and Restatement § 196 (Contracts for the Rendition of Services). Dkt. 24 at 6–11. WIC similarly analyzes choice of law under § 196. Dkt. 30 at 8–10. But as has already been decided, there is no contract governing this case. Thus, neither of these sections of the Restatement govern the choice of law analysis in this case.

---

[3] The contract between Clearwater and JHK is not in the record, and thus the Court is unaware whether that contract contains a choice of law or choice of venue clause.

1    Instead, choice of law for unjust enrichment claims is governed by Restatement

2  (Second) of Law on Conflict of Laws § 221 (Restitution). *See* Restatement (Second) of

3  Law on Conflict of Laws § 221 cmt. a (Am. Law Inst. 1971) ("The rule of this Section

4  applies to claims, which are based neither on contract nor on tort, to recover for unjust

5  enrichment."); *see also Vance v. Microsoft Corp.*, __ F. Supp. 3d __, 2021 WL 1401634,

6  at *5–6 (W.D. Wash. Apr. 14, 2021). In determining which jurisdiction has the most

7  significant relationship to the dispute under § 221, the Court must consider the principles

8  laid out in § 6 of the Restatement:

9       (a) the needs of the interstate and international systems, (b) the relevant
        policies of the forum, (c) the relevant policies of other interested states and
10      the relative interests of those states in the determination of the particular
        issue, (d) the protection of justified expectations, (e) the basic policies
11      underlying the particular field of law, (f) certainty, predictability and
        uniformity of result, and (g) ease in the determination and application of the
12      law to be applied.

13  Restatement (Second) of Law on Conflict of Laws § 6(2) (Am. Law Inst. 1971).

14      In applying the § 6 principles, courts are to consider the following contacts:

15      (a) the place where a relationship between the parties was centered,
        provided that the receipt of enrichment was substantially related to the
16      relationship, (b) the place where the benefit or enrichment was received, (c)
        the place where the act conferring the benefit or enrichment was done, (d)
17      the domicile, residence, nationality, place of incorporation and place of
        business of the parties, and (e) the place where a physical thing, such as
18      land or a chattel, which was substantially related to the enrichment, was
        situated at the time of the enrichment.

19
    Restatement (Second) of Law on Conflict of Laws § 221(2) (Am. Law Inst. 1971). These
20
    factors are "evaluated according to their relative importance with respect to the particular
21
    issue." *Id.*
22

ORDER - 14

1    WIC and Clearwater's relationship was centered in Idaho, where the mill is

2    located. Clearwater similarly received the allegedly unjust enrichment in Idaho, and WIC

3    conferred it in Idaho; the benefit conferred was WIC's work on Clearwater's mill. The

4    only physical thing that is substantially related to the enrichment in this case is the mill,

5    located in Idaho. The only factor that weighs in favor of applying Washington law is that

6    Clearwater (but not WIC) is headquartered in Washington.

7    This analysis differs significantly from that involving JHK in this Court's previous

8    order, especially when considering the § 6 factors. *See* Dkt. 24 at 4–11. There, the Court

9    focused mainly on the MSA's choice of law provision. WIC had a reasonable expectation

10   that claims arising out of the MSA would be governed by Washington law, given the

11   choice of law provision in the contract. In contrast, WIC and Clearwater never

12   contracted, and thus it was not reasonable for WIC to expect claims against Clearwater,

13   in relation to a project conducted in Idaho, to be governed under Washington law.

14   Further, the Court stated in the previous order that the public policy interests of Idaho and

15   Washington in regulating contractors are relatively similar.

16   An actual conflict between Idaho and Washington law exists in this case. Idaho

17   has the most significant relationship to the unjust enrichment claim asserted by WIC

18   against Clearwater. The parties agree that WIC does not have a remedy under Idaho law.

19   *See* Dkt. 30 at 7; Dkt. 27 at 6–7. Therefore, Idaho law applies, and WIC's unjust

20   enrichment claim against Clearwater is barred.

21

22

1

### III.  ORDER

2      Therefore, it is hereby **ORDERED** that Defendant Clearwater Paper

3   Corporation's motion to dismiss, Dkt. 27, is **GRANTED**, and Plaintiff William

4   Insulation Company's motion to take judicial notice, Dkt. 29, is **GRANTED**. The Clerk

5   shall terminate Clearwater as a defendant.

6      Dated this 22nd day of November, 2021.

7

8   _____

9      BENJAMIN H. SETTLE
       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16